# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION


SANDRA WITTENBERG and
HOWARD WITTENBERG,

        Plaintiffs,

v.                                      CASE NO.  8:17-cv-467-T-26AEP

GRADY JUDD, in his official capacity
as the Sheriff of Polk County, Florida;
JASON VARNADORE; and
BRADFORD COPLEY,

        Defendants.

_____/


## O R D E R

    **THIS CAUSE** comes before the Court on Defendants Grady Judd and Jason

Varnadore's Motion to Dismiss First Amended Complaint or, in the Alternative, Motion

for More Definite Statement (Dkt. 27), Plaintiffs' Response in Opposition (Dkt. 29),

Defendant Bradford Copley's Motion to Dismiss and to Strike (Dkt. 28), and Plaintiffs'

Response in Opposition (Dkt. 30).  The Court previously granted Defendants' Motions to

Dismiss (Dkts. 6 & 7) without prejudice to Plaintiffs filing an amended complaint, but

now must find that Plaintiffs' second effort at pleading their causes of action fares no

better.  Having carefully considered the allegations of Plaintiff's first amended complaint

(Dkt. 2), the arguments of counsel, and the applicable law, the Court concludes that the motions to dismiss are due to be granted.

**BACKGROUND AND FACTUAL ALLEGATIONS**

As set forth in the Court's prior order of dismissal (Dkt. 21), Plaintiffs, Sandra Wittenberg and Howard Wittenberg, husband and wife, (also referred to in this order as "Mrs. Wittenberg" and "Mr. Wittenberg") sue Grady Judd as the Sheriff of Polk County, Florida, Jason Varnadore ("Varnadore"), a detective with the Polk County Sheriff's Office, and Bradford Copley ("Copley"), an assistant state attorney for the Tenth Judicial Circuit of Polk County, Florida, for damages resulting from the detention and arrest of Mrs. Wittenberg and unlawful detention of Mr. Wittenberg. Plaintiffs have added 44 new paragraphs to their first amended complaint, most of which were added to the "Common Allegations" section. These new allegations detail the alleged conduct of the officers in carrying out the search of Plaintiffs' home pursuant to a court-authorized search warrant. Plaintiffs also now allege a theft during the search of either $400 or $435 (their allegations in this regard are inconsistent) by Defendant Copley, which was never mentioned in the original complaint.

The first amended complaint alleges that on March 10, 2013, Mrs. Wittenberg mailed a letter to the Polk County Tax Collector that admittedly used "coarse language" and was "rude, angry, and derogatory."[1] Plaintiffs allege, however, that the letter

---

[1] See docket 22, ¶ 10. The letter is attached to the first amended complaint as Exhibit A and reads as follows:

constituted "free speech that is completely protected under the First Amendment of the U.S. Constitution."[2]  Notwithstanding, the letter was evidently reported to the Polk County Sheriff's Office, thereby prompting an investigation.  Plaintiffs allege that on April 2, 2013, a search warrant was issued by a judge of the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, and on April 3, 2013, "more than a dozen

---

To Whom it May Concern:

Per the advice of my attorney, Richard Friedman, I am enclosing a check for $136.00 to be applied to the extortion fund of Christopher Rudolph for tourist taxes that are not due.  The only reason I am paying this is because I am sick and tired of that son of a b**** Rudolph's d*** being stuck up my a** and want him out of my life.  He is an arrogant piece of garbage and a detriment to society.  This piece of garbage has yet to tell me what house this supposed tax was for since I have repeatedly proven that I had ONE house in Polk for the time period that he is going over and all tourist taxes were paid but his ears must be clogged with all the extra fat on his body.

Since my neighbors have told me that they witnessed on two occasions someone at my front door taping a letter on the glass and also putting their ears to the door, if anyone from Polk County tax office steps foot on my property again, I will deem this as a threat to my family and trespassing and will use whatever force I have to against that person under the laws of Florida.

Hopefully now I am paid in full until Rudolph decides to extort more money from me for houses that don't exist.  Now, take this check and stick it up Rudolph's a**.

Sincerely,
Sandra Wittenberg

[2]  See docket 22, ¶ 11.

Polk County Sheriff's deputies arrived at Plaintiffs' residence and executed the warrant."[3] Defendant Copley also attended the execution of the search for the purpose of seeing that it was carried out according to the law.

Plaintiffs allege that in the course of executing a search warrant of the Wittenberg home, Mrs. Wittenberg was arrested without an actual warrant, and Mr. Wittenberg was detained for several hours without probable cause.[4] They add that numerous items were seized at that time that were arguably within the permissible scope of the search warrant; however, firearms were also seized that were outside the scope of the search warrant and not reasonably contemplated by the scope of the search warrant."[5] As mentioned above, Plaintiffs now allege that Defendant Copley seized either $400 or $435 from the console of Mr. Wittenberg's vehicle, never reported it on any inventory reports for the incidence, and never returned the money to Plaintiffs. Plaintiffs allege that Mrs. Wittenberg was later charged with corruption by threat against a public official in the Tenth Judicial Circuit in and for Polk County, Florida.[6] They add that the criminal case was terminated, which "constituted a bona fide termination of that proceeding in her favor."[7]

---

[3] See docket 22, ¶¶ 15-16.

[4] See docket 22, ¶¶ 32-41.

[5] See docket 22, ¶ 42.

[6] See docket 22, ¶ 52.

[7] See docket 22, ¶ 86.

Plaintiffs' first amended complaint seeks damages based on one federal claim for relief and three state claims: violations of both Plaintiffs' Fourth Amendment rights pursuant to 42 U.S.C. §§ 1983 and 1988 against Detective Varnadore[8] and Assistant State Attorney Copley, in their individual capacity (Count I); false arrest and false imprisonment of both Plaintiffs against Sheriff Judd, in his official capacity (Count II); false arrest and false imprisonment of both Plaintiffs for acts committed by Detective Varnadore, in his individual capacity and outside the scope of his employment (Count III);[9] and malicious prosecution of Mrs. Wittenberg only against Detective Varnadore, in his individual capacity (Count IV).

## **DEFENDANTS' ARGUMENTS**

Defendants Sheriff Judd and Detective Varnadore's motion to dismiss argues that: 1) the search warrant and the arrest affidavit establish probable cause; 2) the federal claim against Detective Varnadore should be dismissed based on qualified immunity; 3) the state law false arrest and imprisonment claims should be dismissed against Sheriff Judd in his official capacity and Detective Varnadore because probable cause existed for the arrest and detention; and 4) the state law malicious prosecution claim against Detective Varnadore should be dismissed because the complaint does not allege that he was acting

---

[8]   Defendant Varnadore is the only officer to be sued by Plaintiffs individually, presumably because he completed the search warrant application and arrested Mrs. Wittenberg.

[9]   Only Mrs. Wittenberg was actually arrested.

outside the scope of his employment or otherwise acting in bad faith, with malice, or wantonly.

Defendant Assistant State Attorney Copley's motion to dismiss for failure to state a claim upon which relief can be granted and motion to strike argue that: (1) he is entitled to Eleventh Amendment immunity in overseeing the legal and proper execution of a search warrant signed and approved by a duly constituted Judge of the Tenth Judicial Circuit in and for Polk County, Florida; (2) he is entitled to prosecutorial immunity, or, in the alternative, qualified immunity for his involvement with the search warrant; (3) paragraphs 56 through 59 of Count I (Fourth Amendment Violation against Varnadore & Copley) set forth conclusory allegations against both Detective Varnadore and Copley jointly rather than pleading specific allegations solely against Copley. (Dkt. ¶56 -59); (4) the alleged theft in the amount of either $400 or $435 by Copley is a state law claim belonging in small claims court or, alternatively, a state criminal court claim, and that the alleged theft does not constitute a civil rights claim for violating the Fourth Amendment of the U.S. Constitution; and (5) Plaintiffs' damage claim for severe emotional distress, pain and suffering, mental anguish, loss of capacity for enjoyment of life and punitive damages should be stricken because Plaintiffs do not allege supporting facts.

Defendants attached the search warrant affidavit and the arrest affidavit to their motions.[10]

---

[10] See docket 27, Exhibit A; docket 28, Exhibits A & B. Only a search warrant was ultimately issued in this matter, nevertheless, the Court observes that the factual basis of the

## STANDARD FOR DISMISSAL

In order to overcome dismissal, the complaint must allege "enough" facts, accepted as true and construed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1964-65, 1974, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 US. at 555, 127 S.Ct. at 1964-65 (internal citations omitted). Legal conclusions "couched" as facts need not be accepted as true. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. The conclusory legal allegations must first be separated out, and then "the remaining well-pleaded factual allegations" may be accepted as true and determined whether they state a plausible entitlement to relief. Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Determining whether the claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.[11]

---

search and arrest warrant affidavits are almost identical.

[11] The Eleventh Circuit has clarified that there is no more heightened pleading standard in civil rights cases. Hoefling v. City of Miami, 811 F.3d 1271, 1276 (11th Cir. 2016) ("We expressly held in Randall, and reaffirm today, that 'whatever requirements our heightened pleading standard once imposed have since been replaced by those of the Twombly-Iqbal

Generally, only the four corners of the complaint may be considered in ruling on a motion to dismiss pursuant to Rule 12(b)(6). Cline v. Tolliver, 434 F. App'x 823, 824 (11th Cir. 2011) (unpublished opinion) (citing Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F. 3d 1371, 1379 (11th Cir. 2010)). The court may consider exhibits if referenced in the complaint and attached to the defendant's motion to dismiss, as is the case here with the arrest and search warrant affidavits. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). The court may "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). The Rule 12(b)(6) motion need not be converted into a Rule 56 summary judgment motion "where certain documents and their contents are undisputed." Speaker, 623 F. 3d at 1379. When measured against this standard, it is clear to this Court that the first amended complaint must be dismissed.

## DISCUSSION

## Qualified Immunity

In Count I of the first amended complaint, Plaintiffs sue Defendants Varnadore and Copley, in their individual capacities, pursuant to 42 U.S.C. § 1983, for Fourth Amendment violations. Their sole federal claim is founded on an alleged unlawful search

---

plausibility standard . . . [which] applies to *all* civil actions. . . .'") (citing Randall v. Scott, 610, F.3d 701, 707 n.2 (11th Cir. 2010)).

and seizure, an alleged unlawful detention of Mr. Wittenberg, and an alleged unlawful arrest of Mrs. Wittenberg.  Taking the pertinent factual allegations of the first amended complaint as true, Defendants are clearly shielded from Plaintiffs' federal claim by qualified immunity.

The qualified immunity inquiry is intertwined with the Rule 12(b)(6) standard at the dismissal stage.  Keating v. City of Miami, 598 F.3d 753, 760 (11th Cir. 2010). "Qualified immunity protection applies to all except the plainly incompetent or those who knowingly violate the law and turns upon the 'objective legal reasonableness' of the official's action assessed in light of the legal rules that were 'clearly established at the time the action was taken.'" Gentile v. Bauder, 718 So. 2d 781, 784 (Fla. 1998) (internal citations omitted).  "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999) (quotation marks omitted).  Qualified immunity is not only a shield from liability but also a shield from suit.  See Denno v. Sch. Bd. of Volusia Cty., Fla., 218 F.3d 1267, 1269 (11th Cir. 2000).

To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (citations and quotation marks omitted).  "The determination that an officer was acting within his or her discretionary authority is a 'low hurdle' to clear." Sims ex rel. Sims v. Forehand, 112 F.

Supp. 2d 1260, 1267 (M.D. Ala. 2000). If the defendant satisfies this "low hurdle," the burden shifts to the plaintiff to show that the official violated clearly established constitutional law and qualified immunity is not appropriate. Id. at 1267; Vinyard, 311 F.3d at 1346. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also Burge v. Ferguson, 619 F. Supp. 2d 1225, 1234 (M.D. Fla. 2008) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) ("Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.'" ). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." Burge, 619 F. Supp. 2d at 1234 (citations and quotation marks omitted).

An arrest falls within the police officer's discretionary function and requires only "arguable probable cause" to fulfill the clearly-established element. See Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (citing Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest.'" Case, 555 F.3d at 1327 (citation omitted). After

establishing that the act is discretionary, the plaintiff must then show that the defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation. Fish v. Brown, 838 F.3d 1153, 1162 (11th Cir. 2016) (citations omitted). It does not matter which factor is considered first. Id. at 1162 (citing Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

Plaintiffs simply cannot meet their burden. Defendants Varnadore and Copley have satisfied the "low hurdle" of demonstrating that they were acting within the scope of their discretionary authority. This is undisputed inasmuch as the first amended complaint alleges that they were so acting.[12] Thus, the burden shifts to Plaintiffs to show that a clearly established constitutional right was violated. Vinyard, 311 F.3d at 1346. The evaluation at this stage involves two prongs: (1) whether Plaintiff has presented a *prima facie* case of a constitutional deprivation and (2) whether the right violated was clearly established at the time of the violation. Trammell v. Thomason, 335 F. App'x 835, 840 (11th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Turning to Plaintiffs' *prima facie* case, the first amended complaint sets forth the basis for the § 1983 claim against Detective Varnadore and Copley as an unlawful search and seizure, an alleged unlawful detention of Mr. Wittenberg, and an alleged unlawful arrest of Mr. Wittenberg, all in violation of the Fourth Amendment. These claims necessarily rely on the terms of the search warrant. Plaintiffs did not attach the search

---

[12] See docket 22, ¶¶ 8-9.

warrant to their first amended complaint, but Defendants Judd and Varnadore attached a redacted version, which is also accessible to the public via an online request through the Polk County Clerk of Court, to their motion to dismiss.[13]  The Court will consider the warrant part of the pleadings for purposes of a Rule 12(b)(6) dismissal.  Brooks v. Blue Cross & Blue Shield of Fla., No. 95-405-CIV-MARCUS, 1995 WL 931702, at *5 (S.D. Fla. Sept. 22, 1995), aff'd sub nom., 116 F.3d 1364 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, . . .  the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").  The filing of the search warrant, a document already in the public record, is compliant with Rule 5.2, Federal Rules of Civil Procedure, which governs such filings.  See Fed. R. Civ. P. 5.2(a).

With respect to the instant search and seizure, an examination of the search warrant affidavit reveals that the Polk County Sheriff's Office investigation of Plaintiffs began when Detective Varnadore, then assigned to the Intelligence Unit of the Bureau of Special Investigations for Homeland Security, received a forwarded email dated January

---

[13]  See docket 27, Exhibit B.

16, 2013, originally sent from Mr. Wittenberg to the Mayor of the City of Newtown, Connecticut.[14]  The email included in the affidavit reads as follows:

> From: Howard Wittenberg
> <bowiseauv@msn.commailto:howisepy@msn.com>>
> Date: January 16, 2013 5:04:18 PM EST
> To: "Pat.Llodra@newtown-ct.qov <mailto:Pat.Llodra@newtown-ct.qov>"
> <Pat.Llodra@newtown-ct.qov
> <mailto:Pat.Llodra@newtown-ct.aov>>
> Subject: Fuck those 20 little dead bastards!!! and fuck that nigger in the white house!!!! My gun rights here in Florida mean more to me than the worm food rotting in those 20 graves!!! I do not give a shit!!! God bless Florida and the 2nd  amendment!![15]

These statements are clearly inflammatory and disturbing and, thus, they prompted the Sheriff's Office to send Detective Varnadore to visit Plaintiffs' residence whereupon he made contact with Mrs. Wittenberg, who expressed that she "agreed with the email" and refused a consensual search of Plaintiffs' residence.[16]

    As further noted in the affidavit, Defendants' public records search revealed that Mr. Wittenberg had been arrested and convicted of a misdemeanor charge of the Manufacturing of Explosives in Maryland in 1982 and that Mr. Wittenberg had since purchased several weapons.  Defendants' belief that Mr. Wittenberg had been arrested and convicted on an explosives charge consequently clearly factored into the decision to detain the Wittenbergs during the search of their residence.

_____

[14]  See docket 27, Exhibit B.

[15]  See docket 27, Exhibit B.

[16]  See docket 27, Exhibit B.

Two months later, the Polk Sheriff's Office was notified of the threatening March 10, 2013, letter sent to the Polk County Tax Collector's Office by Mrs. Wittenberg. This letter evidently followed multiple derogatory letters and emails from Mrs. Wittenberg pertaining to a tourist tax dispute with the Tax Collector's Office. According to the search warrant affidavit, the Tax Collector's Office considered the letter to be threatening and due to the escalation of the dispute, a supervisor in the office, Christopher Rudolph, became involved personally with Mrs. Wittenberg's case. The Tax Collector's Office was particularly concerned for employees who were required by law in some instances to post notices at Plaintiffs' residence. The supervisor stated in a sworn statement that there was enough concern to solicit the involvement of law enforcement so that any future visits to Plaintiffs' residence would require a sheriff's deputy to accompany any employee of the Tax Collector's Office. After a letter from the Tax Collector's Office was posted at Plaintiffs' residence, Mrs. Wittenberg responded with a follow-up letter dated March 25, 2013, wherein she expressed her "complete hatred" for the supervisor.

According to Defendant Varnadore's search warrant affidavit, Mrs. Wittenberg used her letters "to threaten some type of force to influence the Tax Collector's Office employees from performing their lawful public duty of collecting taxes and providing notices and correspondences in reference to the Wittenberg's property." Defendant Varnadore then completed the search warrant application that was approved by Defendant Copley and signed by a judge of the Tenth Judicial Circuit Court on April 2, 2013.

Pursuant to the search warrant, the purpose of the search was to find and seize any instrumentality or means by which the felony had been committed or otherwise seize any evidence of threats to public officials under section 838.021, Florida Statutes.

Plaintiffs claim that Defendants unlawfully seized firearms that were outside the scope of the search warrant. However, as Defendants correctly assert, "when in the course of performing a lawful search for an item listed on the warrant, the officers come across other articles of an incriminatory character, that property may be seized under the plain view doctrine." United States v. Johnson, 713 F. 2d 654, 660 (11th Cir. 1983): see also United States v. Roberts, 619 F. 2d 379 (5th Cir. 1980).[17] It is not unreasonable to interpret Mrs. Wittenberg's March 10, 2013, letter as containing a threat to shoot, or otherwise use force against, anyone from the Tax Collector's Office who came onto her property. Moreover, she and Mr. Wittenberg had both expressed contempt for anyone who might be perceived as attempting to curb gun rights, notably in the disturbing email to the Newtown, Connecticut Mayor. Plaintiffs were also known to own guns, the legality of which was not known to Defendants. Under the circumstances, it was not unreasonable for Defendant Varnadore to seize Plaintiffs' firearms. See, e.g., United States v. Story, 463 F. 2d 326 (8th Cir.), cert. denied, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972) (holding that it is not a prerequisite for a legal seizure that the

---

[17] In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

officers know at the time that the seized weapons were not registered.); United States v. Canestri, 518 F.2d 269 (2d Cir. 1975) (holding that when an officer discovers a hidden supply of loaded firearms, he has a duty to determine if the weapons are contraband.). Because qualified immunity is intended to shield government actors in all but "exceptional cases," Plaintiffs cannot avoid qualified immunity on their unlawful search and seizure claim unless they are able to show that Defendant Varnadore and Copley's actions were objectively unreasonable in light of the clearly established law at the time. Plaintiffs fail to meet their burden.

With respect to the detention of Mr. Wittenberg, the law is clear that officers executing a search warrant have the authority to detain the occupants of the premises while a proper search is conducted. In Muehler v. Mena, 544 U.S. 93, 98, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the United States Supreme Court held as follows:

> In Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), we held that officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted. Such detentions are appropriate, we explained, because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial. We made clear that the detention of an occupant is surely less intrusive than the search itself, and the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home. Against this incremental intrusion, we posited three legitimate law enforcement interests that provide substantial justification for detaining an occupant: preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search, as detainees' self-interest may induce them to open locked doors or locked containers to avoid the use of force.

544 U.S. at 98 (internal quotation marks and citations omitted) (rejecting the argument that an innocent detainee must be released once officers cease suspecting him or her of wrongdoing, the Court found that "Mena's detention for the duration of the search was reasonable under Summers because a warrant existed to search [the premises] and she was an occupant of that address at the time of the search."); see also, Los Angeles Cnty. v. Rettele, 550 U.S. 609, 616, 127 S.Ct. 1989, 167 L.Ed.2d 974 (2007) ("[W]hen officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated.").

Once again, Plaintiffs fail to meet their burden to Defendants' actions in detaining Plaintiffs during the lawful search of their residence were objectively unreasonable. Defendants are entitled to qualified immunity because their actions were entirely reasonable in light of the perceived threat expressed in Mrs. Wittenberg's letter alone, even without considering the other information Defendants knew or believed about Plaintiffs, including the fact that they knew that Plaintiffs owned firearms and believed that Mr. Wittenberg had been convicted of an explosives charge.

Finally, the Court turns to Mrs. Wittenberg's arrest with an understanding that although an arrest without a warrant can form the basis of a § 1983 claim, "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." Brown v. City of Huntsville, Ala., 608 F. 3d 724, 734 (11th Cir. 2010). "Probable cause is a standard well short of absolute certainty." Smith v. Sheriff,

Clay Cnty., Fla., 506 F. App'x 894, 899 (11th Cir. 2013) (citing <u>Los Angeles Cnty. v.</u> <u>Rettele</u>, 550 U.S. 609, 615 (2007)) (quotation marks omitted) (unpublished). "The standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Smith</u>, 506 F. App'x at 899 (citations and quotation marks omitted). "Probable cause requires more than mere suspicion, but does not require convincing proof." <u>Id.</u> (citing <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998)). "The probable cause analysis is undertaken in light of the totality of the circumstances, and the standard must be judged not with clinical detachment, but with a common sense view to the realities of normal life." <u>Smith</u>, 506 F. App'x 899 (citing <u>Craig v. Singletary</u>, 127 F.3d 1030, 1042 (11th Cir. 1997)) (quotation marks omitted).

As previously discussed, the instant search warrant contains a wealth of "facts and circumstances" that were within Defendant Varnadore's knowledge to have given him probable cause to arrest Mrs. Wittenberg. Moreover, the trial court judge found probable cause to issue the search warrant based on the same facts and circumstances known to Defendant Varnadore. The analysis required for him to determine whether there was probable cause for the warrantless arrest was virtually identical to the analysis required by the trial court judge herein to issue the warrant. See <u>Barfield v. State</u>, 396 So. 2d 793,

794 (Fla. Dist. Ct. App. 1981) (citing <u>Spinelli v. United States</u>, 393 U.S. 410, 89 S.Ct. 584, (1969) **(**overruled on other grounds)).

Even if this Court only considers the letter Mrs. Wittenberg admittedly wrote, there was sufficient probable cause for Defendant Varnadore to arrest Mrs. Wittenberg.  As Defendants assert, "[a]rguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." <u>Brown</u>**,** 608 F. 3d at 734 (quotation marks omitted).  "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." <u>Id.</u> at 734-35.  "The standard is an objective one and does not include an inquiry in to the officer's subjective intent or beliefs." <u>Id.</u> at 735.  "If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." <u>Id.</u>

Defendant Varnadore is clearly entitled to qualified immunity because Plaintiffs simply cannot show that "that the facts viewed in the light most favorable to the plaintiff[s] establish a constitutional violation" by Detective Varnadore or that "the unlawfulness of the defendant's actions was 'clearly established' at the time of the incident." <u>Poulakis v. Rogers</u>**,** 341 F. App'x 523, 525 (11th Cir. 2009) (unpublished).  As stated previously, it was not unreasonable to conclude that the letter from Mrs. Wittenberg alone set forth a "Threat Against a Public Official" that violates section

838.021, Florida Statutes.  See, e.g., Smith v. State, 532 So. 2d 50, 53 (Fla. Dist. Ct. App. 1988) (finding that the plaintiff's letters crossed a threshold and he may not now claim constitutional insulation for his actions.  Although public figures must expect criticism that may be untrue, unjustified, or hurtful, they do not have to passively accept statements or conduct transcending mere criticism which threaten personal or family safety).  Moreover, Defendant Varnadore had the added benefit of being accompanied by an assistant state attorney, Defendant Copley.  See Drudge v. City of Kissimmee, 581 F. Supp. 2d 1176, 1192 (M.D. Fla. 2008) (the agreement of a state attorney with an officer's probable cause determination provides additional support for the conclusion that a reasonable officer would believe that an arrest could be appropriately effected).

As Defendants correctly argue, it is of no consequence to determining the validity of an arrest itself if charges are dropped against the defendant or if the defendant is subsequently acquitted.  See Zozula v. Florida, 2011 WL 2531203, at *4 (M.D. Fla. June 24, 2011) (citations and quotation marks omitted).  Neither is it "necessary that an officer prove every element of the crime before making an arrest."  Rhodes v. Kollar, 503 F. App'x 916, 924 (11th Cir. 2013) (unpublished).  A law enforcement officer is not held to the same standard as a prosecutor because the standard of conclusiveness and probability for probable cause to arrest is less than that required to support a conviction or even a civil judgment.  See Gerstein v. Pugh, 420 U.S. 103, 121 (1975) ("the nature of the [probable cause] determination itself . . . does not require the fine resolution of

conflicting evidence that a reasonable-doubt or even a preponderance standard demands"). Plaintiffs' federal claim necessarily fails because the first amended complaint does not plausibly allege that Defendant Varnadore did not have a reasonable basis to believe that there was probable cause to search, detain, and arrest. See Malley v. Briggs, 475 U.S. 335, 343-44, 106 S.CT. 1092, 89 L.Ed. 2d 271 (1986) (affirming that qualified immunity is available to officers who have a reasonable basis for believing that there is probable cause).

In light of the Court's determination that Defendants Varnadore and Copley are entitled to qualified immunity from Plaintiffs' § 1983 claim in Count I, Defendants' arguments in support of alternate forms of immunity from this cause of action need not be addressed.

## Supplemental Jurisdiction

Because the Court has resolved Plaintiffs' federal claims in Count I in favor of Defendants Varnadore and Copley, only Plaintiffs' state law claims for false arrest and false imprisonment against Defendants Judd and Varnadore, respectively, in Counts II and III, and for malicious prosecution against Defendant Varnadore in Count IV remain pending in this action. Plaintiffs' alleged theft in the amount of either $400 or $435 by Defendant Copley is also a state law claim belonging in small claims court or, alternatively, a state criminal court claim, and that the alleged theft does not constitute a civil rights claim for violating the Fourth Amendment of the U.S. Constitution.

Title 28 § 1367(c)(3) of the United States Code provides that the district courts may decline to exercise supplemental jurisdiction over state claims where it has dismissed all the underlying federal claims.   In making this determination, the Court should consider factors such as "comity, judicial economy, convenience, fairness, and the like." See May v. Boyd Bros. Transp., Inc., 241 F. App'x. 646, 647 (11th Cir. 2007) (quoting Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999) (internal quotation omitted) (unpublished).  Although this decision is discretionary, see Englehardt v. Paul Revere Life Ins Co., 139 F.3d 1346, 1350 (11th Cir. 1998), the dismissal of state law claims is strongly encouraged where the federal claims are dismissed prior to trial.  See Farquharson v. Citibank, N.A., 664 F. App'x 793, 798, (11th Cir. 2016) (citing Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (internal quotation omitted) (unpublished).  In the interest of judicial economy and convenience, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this action and remands this case to state court.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED** as follows:

(1)   Defendants Grady Judd and Jason Varnadore's Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 27) and Defendant Bradford Copley's Motion to Dismiss Plaintiffs' Amended Complaint and to Strike (Dkt. 28) are **granted** but only to the extent that the federal claims in Count I of the Amended Complaint alleged against Defendants

Jason Varnadore and Bradley Copley are dismissed with prejudice.  The motions are otherwise denied without prejudice to being renewed in the Florida state court.

(2)   The Clerk is directed to enter judgment in favor of Defendants Varnadore and Copley as to Count I of the Amended Complaint.

(3)   The Clerk is directed to remand this case to the Circuit of the Tenth Judicial Circuit in and for Polk County, Florida, for resolution of the Plaintiffs' state law claims for theft, false arrest, false imprisonment, and malicious prosecution.

(4)   The Clerk is directed to **close** this case.

**DONE AND ORDERED** at Tampa, Florida, on June 30, 2017.


_____s/*Richard A. Lazzara*_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record
*Pro se* Plaintiffs